## MAISH v. CRANGLE et al.

1. **Fraudulent Conveyance to Brother-in-law: EVIDENCE.**
Defendant M. was indebted to plaintiff. He was also the owner of a farm, which he conveyed to defendant C., his brother-in-law, for the express purpose, as he stated to others, of avoiding the payment of the debt to plaintiff. In this action to set aside the conveyance and subject the property to the payment of plaintiff's demand, C. testified that he had in good faith paid for the farm in installments, according to the contract of purchase. But he was in no way corroborated, not even by his codefendant M., and the other evidence (see opinion) reveals a state of facts quite contrary to the usual course of business, and out of harmony with the claims and testimony of C. *Held* that he must be regarded as a participant in the fraud, and his title set aside.

Maish v. Crangle.

2. **Pleading**: AMENDMENT AFTER CLOSE OF EVIDENCE. If it was error in this case to permit plaintiff to amend his petition after the close of the evidence, it was without prejudice, because the original petition was sufficient without amendment, in the absence of a motion for a more specific statement.

3. **Practice**: DEATH OF PLAINTIFF : SUBSTITUTION OF ADMINISTRATRIX. No proceedings are necessary to substitute a party plaintiff in case of death. And where the death of plaintiff was suggested, and the court made the entry, " The death of the plaintiff being suggested to the court, it is ordered that ———, his administrator, be, and is hereby, appointed plaintiff herein," the court afterwards, rightly. upon proper proceedings, by a *nunc-pro-tunc* order, inserted the name of the administratrix in the blank.

*Appeal from Pottawattamie District Court.*— HON. GEORGE CARSON, Judge.

FILED, MAY 24, 1890.

THIS is an action in equity by which the plaintiff seeks to subject a farm to the payment of a judgment against the defendant Andrew Martin. The legal title to the land is in the defendant, W. F. Crangle. The defendant Martin was formerly owner thereof, and it is charged that the conveyance from Martin to Crangle was voluntary, without consideration, and fraudulent and void as to the plaintiff, who was a creditor of Martin when the conveyance was made. There was a decree for the plaintiff. Defendant appeals.

*F. Benjamin* and *Sapp & Pusey*, for appellant.

*Flickinger Bros.* and *Pleasants & Parks*, for appellees

ROTHROCK, C. J.—I. The defendant Andrew Martin, in the year 1882, and prior thereto, was a resident of Rock Island county, in the state of Illinois. He was the owner of a farm, on which he resided. On the first day of August, 1882, he borrowed the sum of six thousand dollars of the plaintiff, George H. Maish, and,

1. FRAUDULENT conveyance to brother-in-law: evidence

to secure the payment thereof, with interest, he executed a mortgage to said Maish on said farm. The land was old, worn out, and not worth the amount of the mortgage ; and, in order to obtain a loan of six thou sand dollars, Martin hired appraisers, and paid them fifty dollars each to appraise the land at more than its value. The evidence shows, without any question, that the borrowing of the money was a deliberate plan to cheat Maish out of the difference between the value of the farm and the sum borrowed. The farm in Illinois was worth about thirty-three hundred dollars. In a short time after Martin received the money from Maish, he purchased the farm in controversy in this action. It consisted of one hundred and sixty acres, and is worth about five thousand dollars. He paid cash for the land, with the exception of a mortgage of fourteen hundred dollars which had been made by a prior owner, the payment of which Martin assumed. On the fifteenth day of August, 1884, he conveyed the farm in controversy to the defendant Crangle, and about the same time he executed to his son a chattel mortgage upon his live stock and farming implements. He was then insolvent. He had no farm, and little or no personal property liable to execution. Maish foreclosed the mortgage on the Illinois farm, and realized therefrom some thirty-three hundred dollars ; and he seeks by this action to recover the balance due on the mortgage. He commenced the action in the first instance by attachment, and attached the farm in controversy, and afterwards filed a petition in equity to set aside and avoid the conveyance made to Crangle. It is insisted in behalf of Crangle that the evidence does not show that the conveyance made by Martin to him was fraudulent as to Martin's creditors. He claims, and he testified as a witness upon the trial, that he paid thirty-six hundred dollars, and agreed to pay the mortgage of fourteen hundred dollars, for the farm ; that, of the thirty-six hundred dollars, he paid fifty dollars at the time of the purchase, and executed his

notes to Andrew Martin as follows : One for five hundred and fifty dollars, payable January 1, 1885 ; one for fifteen hundred dollars, payable January 1, 1886 ; and one for fifteen hundred dollars, payable January 1, 1887. He testified that all of the said notes had been paid, and that, when he made the purchase of Martin, he had no knowledge that Martin was indebted to Maish, and no reason to suspect that Martin was intending by the sale of the farm to defraud his creditors. If his statements are true, the decree of the court below should have been in his favor ; and the truth or falsity of his statements is the very question to be determined.

Crangle is a brother of Martin's wife. He is a farmer, and lives in Gage county, Nebraska, about one hundred miles from the Iowa farm. He had never seen the farm when he bought it, and has never seen it since. His testimony is to the effect that Martin and wife went to Crangle, in Nebraska, and sold him the farm, and that he agreed to pay, and really has paid, five thousand dollars for it, on their representation as to its quality and value. He claims that he leased it to Martin for five years ; and he produced a written lease by which Martin agreed to give him two-thirds of the crops, and Crangle to pay for the seed. The evidence shows that Martin continued to occupy the farm as he did before the conveyance ; that he has treated it as his own, built an addition to the house which cost five hundred dollars, built corn cribs, and made other improvements ; that he made no division of the crops raised, but handled and disposed of them the same as if he was owner of the farm. He procured a neighbor to write to the holders of the mortgage on the farm for an extension of time of payment. Crangle testifies that he paid the amount of the notes to Martin personally, in cash. We infer from his testimony that he means to claim that Martin traveled from the Iowa farm to Gage county, Nebraska, and presented the notes as they fell due, and Crangle paid them in cash. He does not claim in his

testimony that he paid the notes before they became due. But he filed his first answer in this case before the last note for fifteen hundred dollars became due. Taking the three facts into consideration, the whole transaction is so unusual, and contrary to all business methods, as to lead the mind to the belief that the sale and conveyance was a mere sham; and Crangle is not corroborated in any degree by any fact or circumstance in the case. He did not even introduce Martin as a witness. It is to be presumed that Martin would have told the same story on the witness stand that he did to a number of others,—that he conveyed the farm to Crangle to avoid the payment of the debt due to Maish. We are well satisfied with the decree of the district court.

II. Before the cause was submitted to the court below the plaintiff filled an amendment to the petition, in which it was distincly averred that Martin was insolvent when he made the conveyance to Crangle. A motion was made to strike the amendment, and the motion was overruled. Appellant claims this was error. If it was erroneous to allow an amendment after the evidence was closed (a point we do not consider nor determine), it was without prejudice, because no amendment was required. The original petition, though somewhat indefinite, was sufficient, in the absence of a motion for a more specific statement.

2. PLEADING: amendment after close of evidence.

III. It appears that George H. Maish died pending the action in the district court, and that his death was suggested, and on the twenty-eighth day of June, 1888, an entry was made in the record in these words: "The death of the plaintiff being suggested to the court, it is ordered that ———, his administrator, be, and is hereby, appointed as plaintiff herein." The same entry was made in the attachment suit. These entries were afterwards, in proper proceedings, corrected by a *nunc-pro-tunc* order inserting the name of the administratrix

3. PRACTICE: death of plaintiff: substitution of administratrix.

in the blanks. The defendant Crangle appeals from these orders, and insists that they are erroneous. We think he is in no position to complain. They are merely formal corrections of the records, to which no valid objection exists. No proceedings are necessary to substitute a party plaintiff in case of death, as counsel for appellant seem to suppose. Charlotte Maish, administratrix, will be substituted as plaintiff in this court, in accord with the suggestion of counsel for appellee. The decree of the district court is

AFFIRMED.